No. 35,864

W. S. Taylor, *Appellant,* v. Robertson Petroleum Company, and J. R. Robertson, *Appellees.*

(137 P. 2d 150)

Opinion filed May 8, 1943.

*Roy L. Rogers,* of Wichita, argued the cause, and *Joe T. Rogers,* of Wichita, was on the briefs for the appellant.

*Glenn Porter,* of Wichita, argued the cause, and *Getto McDonald, Dwight S. Wallace, William Tinker* and *Kenneth W. Pringle,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: The sole question presented in this case relates to election of remedy.

The plaintiff, W. S. Taylor, filed two actions. The first action was dismissed without prejudice. In the second action it was held the rights asserted in the first action were inconsistent with those asserted in the second and that the latter action could not be maintained. From that ruling plaintiff appeals.

The first action was instituted by plaintiff, W. S. Taylor, and one S. L. Milton in the district court of Stafford county on the 16th day of November, 1938. It was dismissed on the 3d day of April, 1939, and the second action was filed in the district court of Sedgwick county on the 20th day of September, 1941. The averments of the first petition were in substance as follows:

Plaintiffs and the defendants, Clyde Barker and E. C. Swanson, on January 13, 1938, associated themselves as joint adventurers pursuant to an oral agreement to acquire oil and gas leases and royalty interests which each of them agreed to assign to a corporation to be formed and named The Eastern Oil and Royalty Company; they obtained a charter but no officers of the corporation had been elected; on the date of that agreement Clyde Barker and E. C. Swanson obtained an oil and gas lease from Wayne T. Hartnett, and Opal J. Hartnett, his wife, on certain described lots in the original town of Zenith in Stafford county; the term of the lease was three months and as long as oil and gas, or either of them, were produced in paying quantities; the lease was assigned to the corporation January 24, 1938; the lease and assignment were promptly recorded; work was commenced on the lease, but a well was not completed within three months; the joint adventurers orally agreed Barker should obtain a three months' extension of the lease; Barker obtained a new lease

for three months beginning March 1, 1938, and ending June 1, 1938, and as long thereafter as, etc., on the same lots and on additional lots in the original town of Zenith, which lease was executed by the Hartnetts and other landowners; that lease was executed to Barker alone as lessee and was promptly recorded; Barker, in violation of his trust, refused to assign the lease to the corporation and refused to hold it for the use and benefit of his associates; on May 20, 1938, W. S. Taylor filed an affidavit in the office of the register of deeds of Stafford county which was duly recorded; in the affidavit Taylor, in substance, asserted:

Barker held the leases on the lots described in the affidavit in trust for himself, the affiant and E. C. Swanson; affiant had expended approximately $2,800 in cash in acquiring leases on the lots described and had further expended a large amount of money to cover personal expenses in connection with the joint venture; affiant is entitled to be reimbursed for the money so expended; affiant owned and held the leasehold jointly and equally with Clyde Barker and E. C. Swanson; the affidavit was recorded to give notice of affiant's right in and to said leasehold to persons who might deal with Barker for the same.

The petition in substance further alleged:

The defendants, The Robertson Petroleum Company and J. R. Robertson, had full knowledge of the oral agreement between the joint adventurers and that Barker had acquired the leases for the use and benefit of each of them; notwithstanding such knowledge The Robertson Petroleum Company and J. R. Robertson purchased the lease from Barker and recorded the assignment thereof; the State Corporation Commission made an order requiring a segregation of lots in the town of Zenith into ten-acre tracts for the purpose of drilling one well on each of such tracts; The Robertson Petroleum Company acquired such tracts and caused wells to be drilled thereon; the defendant Stanolind Pipeline Company laid pipes to such wells and purchased the oil produced therefrom in disregard of the rights of plaintiffs.

The prayer of the petition was in substance: That plaintiffs or The Eastern Oil and Royalty Company be declared to be the owners of the lands described and entitled to a just proportion of the oil and gas produced by the Robertson Petroleum Company or J. R. Robertson; that the sum of $2,800 advanced by the plaintiff, W. S. Taylor, be declared to be a lien upon the interest of E. C. Swanson

and Clyde Barker as formerly held and in such proportion as they had contributed to the expense of the joint venture; that it be decreed The Robertson Petroleum Company and J. R. Robertson purchased with notice and that the title of The Robertson Petroleum Company be canceled, set aside and held for naught as against the interests of the plaintiffs; that the Stanolind Pipeline Company be directed to pay to these plaintiffs the just proportion of the oil purchased or taken by them, and that plaintiffs be given all other proper and equitable relief to which they may be entitled.

As previously stated, that action was dismissed without prejudice. Thereafter W. S. Taylor alone filed the instant action in the district court of Sedgwick county and against only the defendants, The Robertson Petroleum Company and J. R. Robertson for a money judgment in the sum of $2,000. The petition in the second action followed closely the allegations contained in the first petition until the second petition recited the full intent and purpose of the affidavit recorded on May 20, 1938. The averments of the second petition, upon which the cause of action for money judgment rested, were in substance as follows:

J. R. Robertson, The Robertson Petroleum Company and their attorney, K. W. Pringle, stated to plaintiff, W. S. Taylor, that they desired to obtain thirty acres of leases and were anxious to purchase plaintiff's interest in acreage he held in the original town of Zenith; there were other prospective purchasers for acreage in that town; they proposed plaintiff place of record the affidavit in order to prevent other prospective purchasers from obtaining the record title to leases on the lots standing in the name of Clyde Barker; K. W. Pringle prepared the affidavit; they further agreed if plaintiff would convey to The Robertson Petroleum Company such interest as he might have in the lands, and would also aid them in obtaining the leases on the desired thirty acres, they would pay him $2,500 of the $2,800 he had invested; plaintiff did not prosecute his action to recover his interest in the lease covering the lots described in his recorded affidavit but performed his part of the agreement with defendants by assigning to them a lease he held on certain lots (describing them) in the original town of Zenith and by assisting them in every way possible to obtain leases on other lots; this was all done in order that defendants might acquire the title to the leases in question; defendants paid plaintiff $500 on the contract but refused to pay the balance in the sum of $2,000 and plain-

tiff is entitled to a judgment against them for the unpaid balance due on the contract.

The answer of the defendants, in addition to denying generally all matters not expressly admitted, in substance alleged:

Plaintiff and his associates did not, on March 1, 1938, acquire the lease described in the petition and if such lease was obtained, it had long since expired; defendants did offer to pay, and paid, plaintiff $500 for a lease on lots in the town of Zenith, which stood of record in his own name and they were not indebted to him in any other sum; plaintiff dismissed his action in the district court of Stafford county on the 3d day of April, 1939, and the present action was filed on the 20th day of September, 1941; in the petition filed in Stafford county (which was attached to and made a part of defendant's answer) plaintiff claimed to be the owner of an interest in the leases involved and sought a decree canceling all claims of defendants thereto on the theory they had acquired no interest therein; in that action plaintiff made no claim for a money judgment against these defendants; his present claim is inconsistent with the claim asserted in the previous action; plaintiff, having first elected to claim an interest in the leases, which claim he has abandoned, is estopped from now asserting defendants are indebted to him for services arising out of the same transaction.

Upon motion filed by defendants to declare the law upon issues raised by the pleadings, the court sustained defendants' contention and dismissed the action.

The doctrine of election of remedies has received close analysis by distinguished scholars, writers and courts generally over a period of many years. It readily may be conceded considerable confusion exists in the application of the doctrine to cases involving varied facts and circumstances. It may be admitted, also, that the doctrine, at times, has been applied with somewhat harsh results. In the final analysis, however, the authorities are agreed that whether the doctrine applies must be determined by the peculiar facts of each particular case. (28 C. J. S., Election of Remedies, § 4.)

It is, of course, elementary that the doctrine can apply only where two or more inconsistent remedies actually exist at the time the election of one remedy is made. (*Sweet v. Bank,* 69 Kan. 641, 643, 77 Pac. 538; *Curtis v. Hanna,* 146 Kan. 919, 920, 73 P. 2d 1063; *Axe v. Wilson,* 150 Kan. 794, 799, 96 P. 2d 880.)

"Stated briefly, the essential conditions or elements of election of remedies

are: (1) The existence of two or more remedies; (2) the inconsistency between such remedies; and (3) a choice of one of them. If any one of these elements is absent, the result of preclusion does not follow." (18 Am. Jur., Election of Remedies, § 9.)

The doctrine can have no application where two or more existing remedies are consistent. Under such circumstances a party may pursue one or all of them so long as he obtains but one satisfaction. (*Sweet v. Bank,* supra; *State Bank v. Braly,* 139 Kan. 788, 33 P. 2d 141.) The doctrine is an application of one phase of the law of estoppel which prevents one who comes into court, asserting or defending his rights, from taking and occupying inconsistent positions. (*Ireland v. Waymire,* 107 Kan. 384, 386, 191 Pac. 304.) In other words, a person cannot be allowed, in the language of the Scotch law, "to approbate and reprobate." (Bigelow on Estoppel, 6th ed., 732; *Ireland v. Waymire,* supra, 386.) Election, however, goes not to the form but to the essence of the remedy. (*Sweet v. Bank* and *Ireland v. Waymire,* both supra.) "It is the inconsistency of the demands which makes the election of one remedial right an estoppel against the assertion of the other, and not the fact that the forms of action are different." (*Curtis v. Hanna,* supra, 922; 28 C. J. S., Election of Remedies, § 4.) To make actions inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other. (*Curtis v. Hanna,* supra, 28 C. J. S., Election of Remedies, § 4.) "Whether coexistent remedies are inconsistent is to be determined by a consideration of the relation of the parties with reference to the right sought to be enforced as asserted in the pleadings." (*Curtis v. Hanna,* supra, 922; 18 Am. Jur., Election of Remedies, § 12; 28 C. J. S., Election of Remedies, § 4.)

What do the instant petitions disclose? What was the foundation of the respective actions? In other words, what were the rights plaintiff asserted in the respective actions; and were the rights claimed inconsistent? Did plaintiff have knowledge, or the means of knowledge, of the facts upon which his alleged rights were predicated when he instituted the first action? If the rights asserted in the two actions were inconsistent, did the dismissal of the first action without prejudice bar the second action?

Both petitions disclose the oral agreement between plaintiff and his associates to acquire the oil and gas rights in question was entered into on January 13, 1938. The affidavit asserting plaintiff's

interest in the leases was placed of record on May 20, 1938. The first action was not filed until November 16, 1938, approximately six months after plaintiff recorded his affidavit claiming such interest. According to the averments of the petition in the second action it clearly appears the contract now relied upon by plaintiff for a money judgment against the defendants, The Robertson Petroleum Company and J. R. Robertson, was made prior to the recording of that affidavit. In fact, in the second action, plaintiff alleges the affidavit was filed pursuant to that agreement to convey his interest to those defendants and to aid them in obtaining the interests of others· in the leases they desired to acquire. He expressly pleads that everything he did was in furtherance of their desire to obtain such title. Plaintiff also, in the second action, expressly pleaded that pursuant to such contract he was paid by The Robertson Petroleum Company and J. R. Robertson as follows: $200 on June 1; $200 on August 18; and $100 on September 8, all in the year 1938. Plaintiff, therefore, concedes those payments on the alleged contract were all made prior to the filing of the first action. Manifestly, plaintiff had full knowledge of the facts upon which his alleged rights were based when he elected his remedy in the first action. An election of remedy with knowledge or means of knowledge of the facts bars the pursuit of a later inconsistent remedy. (*Ireland v. Waymire,* supra, 386.)

In the first petition the foundation, or theory, of plaintiff's action was that he had an interest in the oil and gas leasehold estates and the oil produced therefrom by virtue of his $2,800 investment and that the defendants, The Robertson Petroleum Company and J. R. Robertson, purchased the leases from Barker with full knowledge of his, plaintiff's, interest therein and, therefore, such purchasers acquired no title to his interest. He prayed that their title be canceled and set aside. In the second action plaintiff repudiated all claim of owning an interest in the properties. The foundation, or theory, of his second action was entirely incompatible with and repugnant to the theory of his ownership and was compatible only with the theory of ownership by the defendants, The Robertson Petroleum Company and J. R. Robertson. Briefly stated, his first action denied what his second action admitted. His first action denied all title in those defendants and sought title for himself. The second action sought a money judgment on a contract with those same defendants which required plaintiff to convey his own interest to them and which also required him to aid those defendants in

acquiring the interests of others in the leases defendants desired to obtain. In the second action plaintiff asserted he had performed that contract. In the same action plaintiff pleaded he did not prosecute his first action, which was based upon his recorded notice of interest. True, he did not prosecute that action to a finality, but he definitely asserted his rights, or position, by a decisive act with full knowledge of the facts. He filed a petition in which he sought the aid of a court of equity to protect his interest in the property. His election was final although he did not prosecute the first action to a finality. The doctrine, as applied in this state, is clearly stated in *Ireland v. Waymire*, supra, where it was held:

"Where property is wrongfully obtained from the owner by another and converted to his own use, the former owner has two remedies open to him, one to treat the title as having passed, and sue for its value, and the other to sue for the recovery of the specific property, and when, with knowledge of the facts, he sues for the value of the property converted, the election is complete, and the other remedy is no longer available to him.

"The fact that the first action did not proceed to judgment, but was dismissed, does not avoid the effect of the election. The commencement of an action or any decisive act of a party determines the election and gives finality to it, regardless of its result." (Syl. ¶¶ 1, 2.)

Whatever the rule may be in some other states, this has been the consistent position of this court since an early day. (*Plow Co. v. Rodgers*, 53 Kan. 743, 37 Pac. 111.) Nor do we conceive it to be out of harmony with numerous modern authorities. In 18 Am. Jur., Election of Remedies, § 18, it is said:

"The beginning of a suit has been characterized as an unequivocal act of election. Many able courts regard it as final and conclusive and believe the better judgment is to hold one to a deliberate choice once made between inconsistent remedies, even though that choice involves nothing more than the determination by the party as to which of two or more remedies will best subserve his purpose."

Plaintiff relies upon authorities which hold that where a person prosecutes an action based upon a misapprehension of the law as to his legal rights no election results. The principle is sound. (*Curtis v. Hanna*, supra, 922; *Axe v. Wilson*, supra, 799.) The difficulty does not lie in the principle but in the fact it has no application here. Plaintiff does not even now contend the first remedy he elected was not actually available to him. In fact, he insists it was available. Assuming it was available—and we think it was—plaintiff did not prosecute the first action based upon a misapprehension of the law.

Plaintiff's contention is the two actions were based upon separate and distinct wrongs, the first being the wrong done by his associate, Barker, in taking the leases in his own name and in assigning them to The Robertson Petroleum Company, the second being a wrong by The Robertson Petroleum Company and J. R. Robertson, which consisted in a breach of their contract to pay him $2,500. He argues that actions to redress those separate wrongs are not inconsistent. Certain forms of action to redress those separate wrongs might not be inconsistent but the rights asserted in the first action here are certainly inconsistent with the rights asserted in the second action. The trouble with plaintiff's contention, as previously indicated, is plaintiff's second action clearly discloses that prior to the filing of his first action he had expressly contracted to convey his interests to The Robertson Petroleum Company and to assist that company in acquiring all other interests in the leases. With full knowledge of that contract and the relation of all parties plaintiff elected his remedy in the first action upon the theory that he had an interest in the leases and that The Robertson Petroleum Company had no interest. He prosecuted the second action upon the theory The Robertson Petroleum Company had acquired his interest.

"All actions which proceed on the theory that the title to property is in plaintiff are inconsistent with those which proceed on the theory that title is in defendant;" (28 C. J. S., Election of Remedies, § 5.)

See, also, *Plow Co. v. Rodgers, Ireland v. Waymire, Curtis v. Hanna,* all supra, and *Eresch v. Quackenbush,* 147 Kan. 311, 315, 76 P. 2d 820.

The judgment of the trial court was correct and it is affirmed.